UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS
EAST ST. LOUIS DIVISION

| | |
|---|---|
| **CARMEN J. FIELDS**, individually and on behalf of all others similarly situated,<br><br>                **Plaintiff**,<br><br>v.<br><br>**ALCON LABORATORIES, INC.**,<br>Serve:   Illinois Corporation Service<br>           801Adlai Stevenson Drive<br>           Springfield, IL 62703<br><br> and<br><br>**ALCON RESEARCH, LTD,**<br>Serve:  Corporation Service Company, d/b/a CSC-Lawyers Incorporating Service Company<br>          211 E. 7th Street, Suite 620<br>          Austin, TX 78701<br><br>                **Defendants.** | Case No. 3:13-cv-00197-WDS-DGW |

**PLAINTIFF'S CLASS ACTION COMPLAINT**

COMES NOW Plaintiff Carmen Fields ("Plaintiff"), individually and on behalf of all others similarly situated, and for her Complaint against Defendants Alcon Laboratories, Inc. and Alcon Research, Ltd. (collectively "Defendants"), alleges as follows:

**INTRODUCTION**

1.      Plaintiff brings this class action individually and on behalf of a Class of Illinois consumers (referred to herein collectively as "Class Members," or "Class") who purchased prescription ophthalmic pharmaceuticals for a single course of treatment that were manufactured and sold by Defendants and who were compelled to pay for much more medication than they could use because of Defendants' illegal practice of filling and selling dispensers with much more medication than could be used.

## PARTIES

2. Plaintiff is a resident of St. Clair County, Illinois. Plaintiff has used ophthalmic pharmaceuticals under a physician's prescription for single courses of treatment, including Vigamox, and has had to discard large portions because Defendants knowingly overfill the containers with substantially more medication than consumers can use pursuant to their physicians' prescriptions.

3. Defendants Alcon Laboratories, Inc., and Alcon Research, Ltd. are corporations incorporated under the laws of Delaware with their principal place of business at 6201 S. Freeway in Fort Worth, Texas.

4. During all relevant times, Defendants manufactured and sold prescription ophthalmic medications for single courses of treatment, including Vigamox and Moxeza.

## JURISDICTION AND VENUE

5. This is a class action filed under Rule 23 of the Federal Rules of Civil Procedure.

6. This Court has jurisdiction over this action pursuant to 18 U.S.C. § 1332(d), which, under the provisions of the Class Action Fairness Act, explicitly provides for the original jurisdiction in the federal courts of any class action in which any member of the plaintiff class is a citizen of a State different from any defendant, and in which the matter in controversy exceeds the aggregate sum of $5,000,000, exclusive of interest and costs, unless the number of members of all proposed plaintiff class in the aggregate is less than 100.

7. Plaintiff and the members of the Class are citizens of Illinois. None of the Defendants are citizens of Illinois. Therefore, diversity of citizenship exists pursuant to 28 U.S.C. § 1332(d)(2)(A).

8. The total claims of the Class Members are in excess of $5,000,000 in the aggregate, exclusive of interest and costs.

9. As alleged herein, the number of members of the Class is at least 100.

10. Venue is proper in this district pursuant to 28 U.S.C. § 1391.

## JURY DEMAND

11. For each of the Counts in this Complaint, Plaintiff demands a jury trial regarding each of the issues to the extent allowed by law.

## FACTUAL ALLEGATIONS REGARDING DEFENDANTS' LIABILITY

12. Defendants have engaged in an unfair and unscrupulous scheme in violation of the Illinois Consumer Fraud & Deceptive Business Practices Act, 815 ILCS 505/1, *et seq.* ("ICFA") to increase their profits by filling and selling topical ophthalmic prescription medications for single courses of treatment only in a form and in quantities that they know greatly exceed the amount needed by the consumer and will inherently lead to wastage of expensive medication through no fault of the consumers.  As a result, Defendants sold a much greater quantity of medication than consumers need to use, and consumers were compelled to purchase greater quantities than they need or can use.

13. Medications that are part of this scheme include Moxeza and Vigamox, which, according to their labels, are sold for treatment of bacterial conjunctivitis, and Nevanac, a non-steroidal anti-inflammatory product, which, according to its label, is indicated for the treatment of pain and inflammation associated with cataract surgery ("the subject medications").

14. Defendants carry out this scheme by filling and selling the dispensers of the subject medications with much more medication than can be used by the consumers.  In their labels and package inserts for the subject medications, they set forth information on the dosage of those medications.  The total medication required to provide such dosage is much less than the quantities that they included in the bottles.

15. For example, the label and package insert for Vigamox states that the dosage is one drop in the affected eye three times a day for seven days. Thus, a complete course of treatment for such use would be 21 drops.

16. According to documents available on the web site of the United States Food & Drug Administration, one drop dispensed from a bottle of Viamox is 38 microliters in volume. Thus, according to Defendants' label, a single course of treatment of Vigamox (i.e. 21 drops) would require only approximately 0.8 milliliters of medication.

17. Defendants, however, sell Vigamox for use by consumers in 4 milliliter bottles that contain 3 milliliters of medication. Thus, a consumer who used 0.8 milliliters of Vigamox would be left with approximately 2.2 milliliters of unused medication at the end of the course of treatment.

18. Defendants sell Moxeza in 4 milliliter bottles that contain 3.0 milliliters of medication. According to the Moxeza label, the dosage for Moxeza is one drop in the affected eye(s) two times daily for seven days. At 50 microliters per drop, a patient requires only 0.7 milliliters of medication to complete a course of treatment, meaning that 2.3 milliliters are unneeded and unused.

19. Defendants sell Nevanac in 4 mililiter bottles that contain 3.0 milliliters of medication. According to the Nevanac label, the dosage for Nevanac is one drop in the affected eye three times daily, beginning one day prior to cataract surgery, continued on the day of surgery and through the first two weeks after the operation. At 50 microliters per drop, a patient requires only 2.4 milliliters of medication to complete a course of treatment, meaning that 0.6 milliliters are unneeded and unused.

20.     In addition, Defendants know or should know that physicians typically prescribe the subject medications only in dosages that require their patients to use much less medication than Defendants put in their bottles for consumer purchase.

21.     The consumer injury caused by Defendants' practice of filling and selling the subject medications in dispensers that contain much more medication than needed by the consumers than can be used is substantial and involves the monetary harm of being compelled into purchasing unwanted quantities of the medication.  This harm is sustained by the large number of people who use these medications.

22.      This injury is not reasonably avoidable by the consumers themselves because their medical providers have prescribed these medications  to treat their medical conditions and the subject medications are not available to them in any quantity that would avoid the need of purchasing substantially greater quantities than they need.

23.     Consumers are unable to purchase less than a complete bottle of the subject medications and therefore must purchase a much greater quantity of medication than needed to treat their conditions.

24.     This injury is not outweighed by countervailing benefits to consumers or to competition.  In fact, there are no countervailing benefits to consumers or to competition from Defendants' practice of filling and selling the subject medications in dispensers that contain much more medication than needed by the consumers

25.     There is no valid reason why Defendants do not fill each vial of the subject medications with a smaller amount of medication.  Defendants provide samples of the subject medications to physicians so that physicians may provide them to patients that contain only 1 milliliter of medication.

26. Defendants do not make the sample sizes of the subject medications available for consumer purchase.

27. On information and belief, Defendants set the price of the subject medications based upon the amount of medication in each container.

28. If Defendants included smaller quantities of the subject medications in the bottles sold to consumers, the prescriptions would be less expensive and consumers would spend less money on the medications.

## CLASS ACTION ALLEGATIONS

29. Pursuant to Rule 23 of the Federal Rules of Procedure, Plaintiff seeks certification of the following Class, defined as follows:

> All persons who, in the State of Illinois, purchased and used the subject medications pursuant to a physician's prescription for a single course of treatment that required them to use less than all of the medication contained in the bottles.
>
> Excluded from the Class are officers, directors and employees of Defendants and any entity affiliated with or controlled by Defendants, counsel and members of the immediate families of counsel for Plaintiff herein, and the judge presiding over this action and any member of the judge's immediate family.

30. Although the exact size of the Class is currently unknown to Plaintiff, it is believed to be over 100 members. Thus, the total number of class members is so numerous that joinder of all class members would be impracticable.

31. There is a well-defined community of interest in the questions of law and fact affecting class members. Among the numerous questions of law or fact common to the class are the following:

    A. The amount of medication contained in the vials of the subject medications;

    B. The size of a drop of the subject medications;

    C. The dosage of the subject medications provided for by Defendants;

6

> D. Whether the total amount of medication included in the bottles of the subject medications is greater than the total dosage Defendants set forth in its product labels and package inserts;
>
> E. Whether Defendants know that the total amount of medication included in the bottles of the subject medications is greater than the total dosage prescribed by physicians;
>
> F. Whether Defendants engaged in a scheme to increase profits by filling and selling the subject medications in dispensers that contain much more medication than needed by the consumers;
>
> G. Whether it is unfair, within the meaning of ICFA, to sell the subject medications in bottles that contain more medication than consumers can use with the result that substantial quantities of the medication will have to be discarded;
>
> H. Whether Plaintiff and Class sustained a substantial injury as a result of Defendants' packaging of the subject medications that contained more medication than they could use with the result that substantial quantities of the medication had to be discarded;
>
> I. Whether the injury sustained by consumers as a result of Defendants' practice of filling and selling the subject medications in dispensers that contain much more medication than needed by the consumers was outweighed by countervailing benefits to consumers or to competition;
>
> J. Whether the injury sustained by consumers as a result of Defendants' practice of filling and selling the subject medications in dispensers that contain much more medication than needed by the consumers was reasonably avoidable by consumers;
>
> K. Whether it would be feasible for Defendants to supply the subject medications in bottles for sale to consumers that contain less medication than the current bottles;
>
> L. Whether Plaintiff and Class are entitled to damages;
>
> M. Whether declaratory and injunctive relief will prevent harm caused to consumers of the subject medications going forward;
>
> N. Whether Defendants acted with the malice necessary to justify an award of punitive damages; and
>
> O. Whether Defendants should be required to pay Plaintiff's attorneys' fees.

32. The claims of Plaintiff are typical of the claims of the Class Members.

33. Plaintiff is an adequate representative of the Class and has no conflict of interest with other class members. Plaintiff's counsel are experienced in this type of litigation and will prosecute the action adequately and vigorously on behalf of the Class.

34. Questions of law or fact common to the Class predominate over any questions affecting only individual class members. The central issue in this case is common among all class members, namely, whether Defendants' practice of packaging the subject medications in bottles that contain substantially more medication than consumers can use, with the result that consumers must discard the excess medication, violates ICFA because it compels all members of the Class to purchase product that will necessarily be wasted. That question predominates over any possible questions affecting only individual Class Members.

35. A class action is superior to other available methods for fairly and efficiently adjudicating the controversy because such treatment will permit a large number of similarly situated persons and entities to prosecute their claims simultaneously and efficiently without the unnecessary duplication of evidence, effort, and expense that numerous individual cases would engender. In addition, the class action mechanism is the only method by which Class Members with small claims could, as a practical matter, seek redress for the wrongs committed by Defendants. There are no unusual difficulties that might arise in the management of this case as a class action.

36. Certification of the Class for purposes of pursuing injunctive relief is proper under Rule 23(b)(2) because Defendants' conduct has affected all Class Members in the same manner, and, in the absence of injunctive relief, will continue to do so. Class Members have no adequate remedy at law to redress the wrongs which are committed by Defendants on a continuing basis.

## COUNT I
## VIOLATIONS OF THE ILLINOIS CONSUMER FRAUD ACT

37. Plaintiff hereby incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein.

38. In Section 2, the ICFA prohibits "unfair acts or practices…in the conduct of any trade or commerce…" 815 ILCS 505/2.

39. That section also provides: "In construing this section consideration shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to Section 5(a) of the Federal Trade Commission Act." 815 ILCS 505/2.

40. Since the 1980s, the FTC has followed its Unfairness Policy Statement, which defines unfairness under the FTC Act in terms of three elements. Under this standard, "[a]n act or practice is 'unfair' under Section 5 if it 'causes or is likely to cause substantial injury to consumers which is not reasonably avoidable by consumers themselves and not outweighed by countervailing benefits to consumers or to competition.'"[1]

41. The FTC's Unfairness Policy Statement further states: "In most cases a substantial injury involves monetary harm, as when sellers coerce consumers into purchasing unwanted goods or services …."[2]

42. The FTC further states that "[a]n injury may be sufficiently substantial…if it does a small harm to a large number of people…."

43. Defendants' practice of filling and selling the subject medications in dispensers that contain much more medication than can be used by the consumers is an unfair practice under

---

[1] The Structure and Practices of the Debt Buying Industry, 2013 WL 419348 (F.T.C. January 1, 2013) at *8, quoting "§ 45(n) (codifying the Commission's unfairness analysis); see also Letter from the FTC to Hon. Wendell Ford and Hon. John Danforth, Committee on Commerce, Science and Transportation, United States Senate, Commission Statement of Policy on the Scope of Consumer Unfairness Jurisdiction, reprinted in *In re Int'l Harvester Co.,* 104 F.T.C. 949, 1079, 1074 n.3 (1984) ( "Unfairness Policy Statement")." 2013 WL 419348 (F.T.C.) at *8, n. 19.
[2] In the Matter of Int'l Harvester Co., 104 F.T.C. 949, n. 12 (1984).

9

the FTC's Policy Statement on Unfairness because, as alleged herein, it causes substantial injury to consumers which is not reasonably avoidable by consumers themselves and not outweighed by countervailing benefits to consumers or to competition.

44.     Defendants (individually and collectively) are all persons as that term is defined in the Illinois Consumer Fraud Act ("ICFA").  815 ILCS 505/1 (c).

45.     The sales of prescription ophthalmic pharmaceuticals for single courses of treatment constitute trade and commerce as defined in ICFA.  815 ILCS 505/1 (f).

46.     Defendants' practices of filling and selling the subject medications in dispensers that contain much more medication than can be used by the consumers violated the ICFA in that they were unfair acts or practices in the conduct of trade or commerce directly or indirectly affecting the people of Illinois.  815 ILCS 505/2, ICFA.

47.     Plaintiff purchased Vigamox and Nevanac, prescription ophthalmic pharmaceuticals manufactured and sold by Defendants for single courses of treatment and thereby sustained actual damage as a result of Defendants' violations of the ICFA as alleged herein.  Such damage was in the form of the amount she paid for medication that could not be used because the container was filled with substantially more medication than needed to complete her course of treatment.

48.     The unlawful actions of Defendants alleged herein caused similar damage to the other members of the Class.

49.     Defendants' actions, as alleged herein, were performed intentionally, willfully, knowingly and maliciously.

50.     Injunctive relief is necessary and proper to compel Defendants to cease their violations of the ICFA, as alleged herein.

WHEREFORE, Plaintiff and Class pray that this Court grant the relief stated in the Prayer for Relief, *infra*, which is hereby incorporated by reference into this Count.

### COUNT II
### UNJUST ENRICHMENT

51. Plaintiff incorporates by reference and re-alleges all preceding paragraphs of the Complaint as though fully set forth herein.

52. Defendants were enriched by the receipt of excessive and unfair payments because of the deceptive and unfair activities alleged herein.

53. As a result, Defendants were enriched at the expense of Plaintiff and the Class.

54. Allowing Defendants to retain the monies they received from these payments would be unjust.

WHEREFORE, Plaintiff and Class pray that this Court grant the relief stated in the Prayer for Relief, *infra*, which is hereby incorporated by reference into this Count.

### COUNT III
### MONEY HAD AND RECEIVED

55. Plaintiff incorporates by reference and re-alleges all preceding paragraphs of the Complaint as though fully set forth herein.

56. Defendants have received money from Plaintiff and Class by the unfair practices alleged herein, which in equity and good conscience ought to be returned to Plaintiff and Class.

WHEREFORE, Plaintiff and Class pray that this Court grant the relief stated in the Prayer for Relief, *infra*, which is hereby incorporated by reference into this Count.

## **PRAYER FOR RELIEF**

Plaintiff and Class request this Court enter judgment in their favor and against Defendants as follows:

A. Order that this action be maintained as a class action pursuant to Fed. R. Civ. Pro. 23(b)(2) and (b)(3), defining the Class as follows:

All persons who, in the State of Illinois, purchased and used the subject medications pursuant to a physician's prescription for a single course of treatment that required them to use less than all of the medication contained in the bottles.

Excluded from the Class are officers, directors and employees of Defendants and any entity affiliated with or controlled by Defendants, counsel and members of the immediate families of counsel for Plaintiff herein, and the judge presiding over this action and any member of the judge's immediate family.

B. Appoint Plaintiff as Class Representative and Plaintiff's counsel as counsel for the Class;

C. Award actual damages in an amount that together exceeds the aggregate sum of $5,000,000 to Plaintiff and Class Members;

D. Award punitive damages;

E. Award declaratory and injunctive relief including a preliminary and permanent injunction enjoining Defendants from continuing the unlawful practices described *supra*;

F. Award pre-judgment and post-judgment interest;

G. Award reasonable attorneys' fees and costs incurred in prosecution of this action; and

H. Award such further relief as the Court deems fit and proper.

Dated:  February 27, 2013	Respectfully submitted,

        LAW OFFICE OF RICHARD S. CORNFELD


        By:  */s/ Richard S. Cornfeld*
           Richard S. Cornfeld
           1010 Market Street, Suite 1605
           St. Louis, MO  63101
           (314) 241-5799
           (314) 241-5788 (fax)
           rcornfeld@cornfeldlegal.com

           and

           John G. Simon
           Stephanie H. To
           THE SIMON LAW FIRM, P.C.
           800 Market Street, Suite 1700
           St. Louis, MO 63101
           P. 314-241-2929
           F. 314-241-2029
           jsimon@simonlawpc.com
           sto@simonlawpc.com

        ***Attorneys for Plaintiff***